# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT THE JUNE TERM, 1864.

———◆◆◆———

## BLANN vs. THE STATE.

39 353
108 504

[INDICTMENT AGAINST CONTRACTOR FOR FAILURE TO KEEP PUBLIC
BRIDGE IN REPAIR.]

1. *Constitutionality of law making neglect of public bridge by contractor*
   *indictable as misdemeanor.*—The act approved November 24, 1862,
   (Session Acts, 1862, p. 101,) which makes it an indictable offense, for
   any person who has built a public bridge by contract with
   the county commissioners, "knowingly to suffer such bridge to re-
   main out of repair, and unsafe for the passage of travellers and other
   persons, for more than ten days at any one time, during the period
   stipulated for its safety by the terms of his contract," does not
   violate the obligation of such contracts made before its passage, and
   is not obnoxious to any constitutional objection.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. PORTER KING.

THE indictment in this case, which was found at the No-
vember term of said court, 1863, was in the following
words : "The grand jury of said county charge, that,
before the finding of this indictment, Elza Blann erected
a bridge across Bougchitto creek in said county, known as
'Ramer's bridge,' on the lower Linden road, by contract
with the county commissioners, and obligated himself to
keep the same in good repair for the term of five years,
and knowingly suffered the same to remain out of repair,

and unsafe for the passage of travellers and other persons, for more than ten days at a time, during the period stipulated for its safety by the terms of the contract; against the peace and dignity," &c. No objection was interposed to the indictment, and the only plea was not guilty.

" On the trial," as the bill of exceptions states, " it was in evidence that, on the 1st November, 1859, the defendant entered into bond with surety, payable to the judge of probate of said county, to keep the bridge mentioned in the indictment in repair, and safe for travellers and others, for five years from the date thereof; that said bridge, within twelve months before the finding of the indictment, was out of repair, and unsafe for travellers and others, for more than ten days at one time, with the defendant's knowledge; that said bridge was not a toll-bridge, but was a county bridge, and was built under contract with the defendant as aforesaid. This evidence being before the jury, the defendant asked the court to charge the jury that, as the defendant's contract to keep in repair, &c., was made in 1859, the amendment of section 1203 of the Code of Alabama, approved November 24, 1862, was retrospective in its operation on the defendant's rights under said contract, and had no bearing upon, or relation to this case, and should not be considered upon the trial of the same, and the defendant should be acquitted. The court refused to give this charge, and the defendant excepted to its refusal."

GEO. W. GAYLE, for the appellant.
M. A. BALDWIN, Attorney-General, contra.

A. J. WALKER, C. J.—The defendant contracted to keep in repair for five years a bridge constructed by him under contract with the county commissioners. A suit for damages was prescribed by section 1203 of the Code, as the redress for a private injury, resulting from a breach of the contract to keep the bridge in repair. After the contract was made, an act was passed by the legislature, which made it an indictable offense for such contractor "to knowingly suffer any such bridge to remain out of repair,

and unsafe for the passage of travellers and other persons, for more than ten days at any one time, during the period stipulated for its safety by the terms of his contract." Acts of 1862, p. 101. Under this statute, for a misfeasance subsequent to its passage, the defendant was indicted.

The point upon which a reversal is sought is, that after the defendant's contract was made, it was incompetent for the legislature to make a neglect, which involved a breach of such contract, an indictable offense. It is supposed that legislation of that character would impair the obligation of the contract. The question thus presented is, whether the legislature can make criminal the breach of a pre-existing contract, which breach is in its nature prejudicial to the public good, and was before only the subject of a suit for damages in favor of an injured party?

Much discussion has been had as to the precise import of the phrase " obligation of contracts," used in the constitution. Whether this obligation is the force of the municipal law existing at the date of the contract, or of the moral, natural, and municipal law combined; or whether it is the inherent and intrinsic force of the contract itself, obliging to the performance of its stipulations, have been the points of disputation.—*Sturgis v. Crowninshield*, 4 Wh. 122; *Ogden v. Saunders*, 12 Wh. 257. We may confine ourselves to limits without the reach of such discussion, and assert a definition sufficiently specific for this case. The obligation of a contract is that which requires the performance of the legal duties imposed by it. The duties imposed upon one of the contracting parties are correlative to the rights of the other. What one party is obliged to perform, the other has a right to have performed.

Then, the law, the constitutionality of which is disputed in this case, does not impair the obligation of the contract, unless it interferes with some right arising out of the contract. The effect of the law is simply to make a specified breach of the contract a penal offense. It impairs no right given by the contract, or by the subsisting law, unless out of the contract there springs a right to break it. To say that a right, given by a contract, consists of the privilege of violating it, would be an absurdity. We can find no

reason upon which to sustain the proposition, that the law in question impairs the obligation of the contract. The statute, in consulting for the public good, has really afforded an additional guaranty for the observance of its stipulations. If it be regarded as an additional remedy, designed to enforce the performance of the contract, it would still be upon established principles constitutional.—*Coosa River Steamboat Co. v. Barclay*, 30 Ala. 120.

We entertained the opinion, from our first glance at this case, that there was no merit in the ground upon which the assignment of error is put. But, as the appeal is prosecuted by learned counsel, we were apprehensive that there might be something to support the point made, which escaped detection upon a slight examination. We have therefore looked into the books for precedents upon analogous questions. We have found several, which are not distinguishable in principle from this case, and which sustain our decision. It has been held, that an act, imposing a penalty of two per cent. per month on a bank, for a refusal to pay its bills, was constitutional.—*Brown v. President &c., of P. Bank*, 8 Mass. 445; *S. C.*, Angell & Ames on Cor. § 463. The same decision has been made as to a law of a municipal corporation prohibiting interments in grounds purchased for that particular purpose.—*Coates v. Mayor &c. of New York*, 7 Cow. 585. Also, as to a law giving a right of recovering damages to the representative of a decedent, from the person who caused the death of such decedent, even when it operates on a railroad corporation existing before the passage of the law.—*S. W. R. R. v. Paulk*, 24 Ga. 356. Also, as to a law imposing upon existing railroads the duty of erecting fences, cattle-guards, &c., and prescribing a penalty for the omission to perform those duties.—*Waldron v. R. S. R. R. Co.*, 8 Barb. (S. C.) 390; *Thorpe v. R. & B. R. R. Co.*, 27 Ver. 140 ; *Gorman v. Pacific R. R. Co.*, 26 Miss. 441 ; *Norris v. Androscoggin R. R. Co.*, 39 Maine, 273. Also, as to a law making the proprietors of existing railroads responsible for injuries by fire, communicated from their locomotives.—*Lyman v. Boston & W. R. R. Co.*, 4 Cush. 288. The opinions in these several cases will be found to cover the principle announced by us.

There can be no question of the authority of the legislature to make a neglect, such as is charged in this case, a criminal offense. Being an authority legislative in its nature, the objector assumes the burden of showing that the act is inconsistent with some provision of the Confederate or State constitution.—*Dorman v. State*, 34 Ala. 216. The law upon which the indictment here is founded is inconsistent with no constitutional provision, and we must declare it valid.

Affirmed.