# Crosby v. City Council of Montgomery.

*Prosecution for Violating City Ordinance.*

1. *City ordinance; validity.*—In the absence of evidence to sustain the contention, the court can not judicially say that an ordinance prohibiting a water company from demanding of a consumer a higher domestic rate than $6.00 per annum for a building of five rooms or less, and $1.00 per annum for each additional room, is on its face oppressive and void.

2. *Same; construction.*—As used in such ordinance, the word "room" means those apartments, which, regardless of the use to which they are actually put, are adapted with more or less convenience, to personal occupation, and will include a kitchen, but not a pantry, bath-room or water-closet

3. *Same*—The words "domestic purposes", as used in such ordinance, is not uncertain or indefinite, but include all uses which contribute to the health, comfort and convenience of the family, in the enjoyment of their dwelling as a home.

[Crosby v. City Council of Montgomery.]

4. *Constitution; impairing the obligation of contracts.*—Where a party agrees to furnish water to a city or its inhabitants, he assumes a public duty, and a willful violation or neglect of such duty may be declared a misdemeanor and punished as such, although growing out of a contract, without impairing the obligation of the contract; nor would this be imprisonment for debt, or take away a vested right, or deprive the party of due process of law. But a city can not by a pretended exercise of such power, make a valid ordinance for the punishment of an act authorized by the contract.

5. *City ordinance; construction.*—The ordinance of the city of Montgomery, "To prohibit the Capital City Water Company from charging higher domestic rates than those allowed by their contract with the city," does not apply to the charges for water furnished a consumer by meter rates at his election, but only where he takes water under the fixed prices of six dollars a year for a house of five rooms or less, and one dollar a year for each additional room.

6. *Same; evidence.*—The opinion of a city's attorney as to the construction of a contract between the city and a water company is inadmissible as evidence before the jury.

7. *Charge to jury.*—In a controversy between a water company and a consumer growing out of an alleged overcharge for a quarter from July 1st to October 1st, the fact that the complaint laid the offense on October 20th, did not confine the evidence to that day.

APPEAL from the City Court of Montgomery.
Tried before Hon. T. M. ARRINGTON.
All the material facts of this case are set out in the opinion.
The court charged the jury orally, after which the plaintiff asked the court in writing to give the following charge to the jury, to-wit:
"The court charges the jury that the words "meter to go in" stamped in bills rendered to Finley would not make it obligatory on Finley to pay for putting in the meter, or to pay for the rent thereof, and can not, because he did not reply to this notice, be considered an election on his part to take water at the meter rate. If the evidence is conflicting as to whether Finley otherwise elected to take water at meter rates, the foregoing words can only be looked to in determining the question as to whether he in fact elected to take the water at meter rates."
Which charge the court gave, and defendant then and there duly excepted.
Defendant then and there asked the court in writing to give the following charge to the jury:

[Crosby v. City Council of Montgomery.]

1st. "If the jury believe the evidence in this case, they must find the defendant not guilty."

Which charge the court refused to give and the defendant then and there duly excepted.

Defendant then asked the court in writing to give the following charge to the jury:

2d. "The charge in this case is that the defendant did, on or about the 20th day of October, demand of John G. Finlev, a consumer of water furnished by the Capital City Water Company, a higher domestic rate than six dollars per annum for the use of such water in a dwelling of five rooms or less, and one dollar per annum for each additional room, contrary to the provisions of an ordinance. And if the jury believe from the evidence that the only demand made upon the said John G. Finley was that he should pay three dollars for the setting of a meter and fifty cents for the rent of said meter, then the jury should find the defendant not guilty."

Which charge the court refused to give, and the defendant then and there duly excepted.

The defendant then asked the court in writing to give the following charge to the jury:

3rd. "If the jury believe from the evidence that the demand made upon John G. Finley was for three dollars for the setting of a meter and fifty cents for the rent of the meter, and that no other demand was made upon him, then they must find the defendant not guilty."

Which charge the court refused to give, and the defendant then and there duly excepted.

The defendant then asked the court in writing to give the following charge to the jury:

4th. "If the jury believe from the evidence that the demand made by the defendant upon John G. Finley was in the following words, viz.:

"MONTGOMERY, ALABAMA, July 30, '94.
"Mr. John G. Finley                                    To
    The Capital City Water Co.                          Dr.
Setting meter at No. 610 S. McDon.............$3 00
Rent to 10, 1-94......:..........................   50
                                                 _____
                                                 $3 50

And if the jury further find from the evidence that there

[Crosby v. City Council of Montgomery.]

was nothing said between said Finley and the defendant about a domestic rate for a house of five rooms or less, or any additional rooms, then the jury must find defendant not guilty."

This charge was refused, and defendant excepted.

THOS. G. JONES, for appellant.—1. A "guilty intent" on part of defendant must be shown, to authorize a conviction—*Woolsey v. Jones*, 84 Ala. 88 ; *Grooms v. Hannon*, 59 Ala. 512 ; 1 Bish. Cr. L., § 345 ; *U. S. v. Kirby*, 7 Wall. 487 ; *White v. State*, 44 Ala. 409 ; *Thompson v. Jones*, 1 Stew. 560.

2. The ordinance is void for uncertainty.—Bish. Stat. Cr. § 41 ; *Ex parte Bell*, 32 Tex. Cr. Rep. 311 ; *Kearney v. Adams*, 5 Stock. Ch. (N. J.) 76 ; *State v. Coster*, 12 So. Rep. 739 ; *L. & N. R. R. v. R. R. Comm.*, 16 A. & E. R. R. Cases ; *McConnell v. May*, 39 N. J. Law, 43 ; *Corn v. Bly*, 140 Mass. 432 ; *State v. Partlow*, 49 Am. Rep. 652.

3. The term "domestic rates" is vague and uncertain.—*Smith v. Birmingham Water Co.*, 104 Ala. 315 ; *Allen v. Duluth*, 48 N. W. Rep. 1128 ; 37 Fed. Rep. 747.

J. G. WINTER, GORDON MACDONALD and J. A. KIRKPATRICK. *contra.*—The term "domestic" is certain and well defined.—*Smith v. Birmingham Water Co.*, 104 Ala. 315 ; *Busby v. Chesterfield Water Works*, 96 E. C. L. 170 ; 11 Jac. Fish. Dig. 18, 639 ; *Weaver v. Cardiff*, 48 L. T. N. S. 906.

2. A breach of a public duty can be declared a crime. 3 Barn & Ad. 77 ; 9 Bing. 97 ; *Stein v. State*, 37 Ala. 123 ; 98 U. S. 521.

COLEMAN, J.—The appellant, Crosby, was prosecuted and fined for demanding a higher price for water, than the rates fixed by the city council of Montgomery, and in violation of a city ordinance, which imposed a penalty for such a charge.

On the 7th of October 1885, the city council entered into an agreement for the supply of water for the city and its citizens. Section 15 of the agreement reads as follows : "Be it further ordained, That the domestic rates for water furnished under this contract to citizens of Montgomery, shall never exceed the average rates paid in other cities of similar size ; the present basis of

such rates shall be six dollars a year for a building of five rooms and less, and one dollar a year for each additional room, other rates to be proportionate to these, as above ordained. Said rates shall be such as to allow for the use of the meters by consumers, if they so select."

On December 6th, 1889, the city council adopted the following ordinance: "An ordinance to prohibit the Capital City Water Company from charging higher domestic rates than those allowed by their contract with the city.

"Be it ordained by the City Council of Montgomery as follows: That any officer, agent or employé of the Capital City Water Company, who shall demand of any consumer of the water of said company in this city a higher domestic rate than $6.00 per annum for the use of such water for a building of five rooms or less, and $1.00 per annum for each additiona' room, whether the occupants of such building consist of one family or of different families, and whether one or more faucets are used for domestic purposes, shall on conviction thereof be fined not less one hundred dollars, and shall also be imprisoned not more than one hundred days." By act of February 26th, 1887, (Acts of 1886-87, pp. 488--9), authority was conferred upon the city "to regulate the manner and rates of furnishing water to private consumers."

The defendant assailed the validity of the ordinance, and also controverted the charge, that he had committed any act in violation of its provision.

The evidence shows that the defendant demanded of the consumer for water $2.50 per quarter, and a charge for setting a meter $3.00 and for rent of meter fifty cents. The evidence also showed that the consumer occupied a dwelling of six rooms, besides a kitchen, pantry and bath room."

It is contended in argument for the appellant, that the rates allowed by the ordinance are unreasonable and oppressive, and therefore void. No evidence was introduced to sustain this contention, and the court cannot judicially say the ordinance, on its face, is unreasonable or oppressive. It is further contended that the ordinance having failed to define a "room" or ascertain what constitutes "domestic purposes" is uncertain, indefinite, and void. We are of opinion this criticism is

not well founded. In its broad definition, a room is any space or apartment, separated from others by partitions. A mere closet, or any small apartment thus separated, would be included in this comprehensive definition of a room. In its general acceptation, and we think it may be said it is common knowledge, the rooms of a dwelling house are understood to include those apartments, which are adapted, with more or less convenience, to personal occupation. The use to which it may be applied, alone will not determine its character. A room comfortable for sleeping purposes might be applied solely to use as a bath room or pantry. Such use would not destroy its character as a room of the dwelling house, within the meaning of the ordinance. Nor is it any the less a room of the dwelling, if it is permitted to remain vacant and unused for any purpose. The language of the ordinance is "a building of five rooms" "the occupants of such building." A consumer could not reduce the payment of the water rate, by a mere personal occupation of a few rooms of a building, and leaving vacant other rooms equally adapted for use, nor by calling them "bath rooms," or "pantries." We would say that an apartment of a building used for and suitable for the purpose of cooking and denominated a kitchen, without further description, would come within the definition of a room of the building. We think it equally clear, that the rooms of a building, within the ordinance and contract, do not include any small apartments prepared and adapted for use as mere pantries, water closets or bath rooms. The evidence as to these additional apartments is not very full, but the meagreness of the description of the apartment can not affect the meaning of the ordinance or render it vague or uncertain.

The rates fixed by the ordinance are for water used by the family, or families, for "domestic purposes." It is contended that the term "domestic purposes" is vague and uncertain, and that its meaning has not been ascertained by law. Although different courts may not have construed "domestic purpose" alike, some extending it to subjects and uses not included in the definition given by others, this would not justify a court, in declaring a statute void because of the use of the word "domestic." The fact that the courts have declared the meaning of the term, and upheld the statutes and contracts using

this term, is authority against the contention that its use renders the statute or contract void. Many statutes have used the word "domestic." There are provisions in regard to "domestic animals," "domestic wines," "domestic distilled spirits," "domestic servants," "domestic business concerns of a family," "domestic persons."—Bouv. Law Dictionary; 5 Amer. & Eng. Ency. of Law, p. 586, and notes. Domestic uses, or purposes, of water for a family, occupying a dwelling house, include all uses which contribute to health, comfort and convenience of the family, in the enjoyment of their dwelling as a home. We do not doubt, that a family has the right to devote a room of the dwelling for bathing purposes, another for a water closet, and the water thus used, would be included in "domestic purposes," without being liable for an extra charge on account of the use thus made of the water.

It appears that express authority to "regulate the manner and rates of furnishing water" was not conferred on the city until long after the adoption of the contract. Appellant contends that it was not within the power of the legislature to authorize the city to punish by fine and imprisonment a violation of the contract, previously made. It is very generally settled, that where a party agrees to furnish water to a city or the inhabitants thereof by a contract, he assumes a public duty, and, we are of opinion, that a willful violation or neglect of a public duty, although growing out of contract, may be declared a misdemeanor and punishable as such, without impairing the obligation of the contract, nor would imprisonment for such a violation of the contract be imprisonment for debt. Such a statute would not take away any vested contract right, nor deprive the party of property without due process of law.—*Blan v. The State*, 39 Ala. 353; *Stein v. The State*, 37 Ala. 123; *Spring Valley Water Works v. City of San Francisco*, 82 Cal. 286, 16 Am. St. Rep. 116; *City of St. Louis v. Bell Telephone*, 96 Mo. 623, 9 Amer. St. Rep. Although it would be entirely competent to punish by fine and imprisonment a neglect of public duty or a violation of public duty growing out of contract, yet an ordinance which imposes a fine or imprisonment for the commission of an act, authorized by contract, would be invalid. A city cannot by the pretended exercise of its police power, or

the power to regulate water rates, prohibit the contracting party from the exercise of every right and claim provided for in the contract, and which the parties had the right to provide for at the time; nor had the city authority by ordinance to change the terms of the contract, without the consent of the other party. Soon after the adoption of the water contract, the city council construed section 15, and declared the word " 'basis' therein to mean the minimum use of water, viz., the water use for one faucet." "It further declared that a "room" did not mean a store room, bath room, hall or closet." It also declared "that a consumer who desires more than one faucet, and bath room, and faucet for sprinkling purposes, can have the same, on a rate proportionate to the above, or if he prefers, may have a meter to measure the amount actually used." The Water Company was not bound by this construction put upon the contract by the city, but the water company and the city had the right to modify their original contract so as to conform to the construction thus given to the agreement. At a subsequent meeting of the city council, by ordinance it seems to have repudiated its former construction of the contract and gave it a different construction. The latter construction led to the adoption of the ordinance under consideration. The city by ordinance could not prohibit the Water Company from charging rates as fixed by the contract as long as it remained in force and without modification, much less could it punish by fine and imprisonment the exercise of this right. The evidence shows that the prosecutor, put in use three additional faucets. If the evidence shows that the Water Company accepted the construction first placed upon the agreement, wherein it declared, that "store room," "bath room," "water closets," were not "rooms" within the meaning of the contract, but that only one faucet was authorized by the contract, and by its acceptance of this construction, the contract was modified in the respects mentioned, the Water Company had the right, under the modified contract, to charge for the use of additional faucets, and the city was powerless by ordinance to permit the exercise of this right; or to authorize the use of any number of faucets, without the consent of the Water Company. It is clear the consumer had the right to have his water measured, and to pay for it by measure-

ment, and it is also clear, that the company had no option in the matter of requiring the consumer to pay for water by measurement without his election. The evidence shows that meter rates charged were $2.50 per quarter. We do not find in the contract as originally made, or in the modified contract, if such was made, any specification of water rates, by measurement, except the general provision "that the domestic rates for water furnished under this contract to citizens of Montgomery, shall never exceed the average rates paid in other cities of similar size." The ordinance is not broad enough to cover a breach of this stipulation in the contract, without considering any other objectionable feature of the stipulation. It is manifest that the defendant is not and could not be prosecuted for a violation of this stipulation in the contract. It follows that if the consumer elected to use water by measurement, and not under the fixed basis, as specified in the ordinance and contract, and the water was furnished by measurement and charged for at meter prices, the defendant has not violated the ordinance. Our construction of the ordinance is, that it does not apply to, and was never intended to apply to the charges for water furnished to a consumer by measurement, at his election, but only to cases, where the consumer received his water under the fixed prices of six dollars a year for a building of five rooms and less and one dollar a year for each additional room," &c. Whether the prosecutor elected to use water under the fixed price, or at the meter prices, or under the contract modified, if it was modified, by which an increased charge was authorized for the use of additional faucets are controverted questions of fact. The evidence is in direct conflict, We are of opinion, however, that the defendant could not charge for meter prices, without the use of a meter, unless the Water Company and consumer, expressly or impliedly, agreed upon a price. The evidence shows that the consumer had been paying $2.50 per quarter, or $10 per annum, for a number of years without objection. He testifies that he never elected to use water by measurement, that he never requested that a meter be put in his dwelling, and that he paid the quarterly payments without knowing the fixed rates, or that he was being charged meter rates. On the other hand, the evidence for the defendant tends to show that

[Crosby v. City Council of Montgomery.]

the prosecutor elected and agreed to pay for water at meter rates, and had paid meter rates for a number of years with notice that he was being charged meter rates. We have stated the law applicable to either phase of the evidence.

One question has been argued with much earnestness which we do not consider necessarily involved in the case, and that is, in the event the consumer should elect to use a meter, which of the parties should defray the cost and expense of setting the meter? In the case before us, it appears that the consumer was charged three dollars for setting the meter, and a rental charge, in addition, of fifty cents. The ordinance has no application when water is furnished at meter rates at the election of the consumer, nor does the ordinance undertake to punish the water company or any agent or officer, for charging a consumer for setting a meter for the use of the consumer. Whether the consumer is chargeable for the meter, or whether it is to be supplied by the company, is a matter of construction of the contract, to be determined when the question is raised. In construing the contract between the city of Birmingham and the Water Works Company (*Smith v. Birmingham Water Works*, 104 Ala. 315), we held that it was the duty of the company to supply the meters. There is evidence tending to show that the present controversy arose entirely out of the demand for payment for setting a meter and the rental charge for its use, and not on account of the price charged for water. Whether under the contract, the one or the other is chargeable for the meter, the defendant could not be convicted under the ordinance for demanding payment for setting the meter, if his charges for water did not exceed those provided for in the ordinance, or if the prosecutor had selected to pay by measurement and the parties had agreed, expressly or impliedly, upon the price for water, nor could the defendant be convicted, if the original contract, by mutual agreement, was so modified that the consumer was not entitled to use but one faucet, and for his own convenience used three or four faucets. If the contract of the city and the water company was that a consumer should use only one faucet, and he used three or four, the defendant could not be required to furnish water at the fixed rates, but the parties could agree upon

the price to be paid, or the consumer could select meter rates.

The court erred in admitting the opinion of the city attorney as to the construction of the contract. It could not be used as evidence before the jury.

The court erred in the instruction given to the jury for the prosecution. The charge is objectionable in that it is argumentative, but its chief vice consists in its invasion of the province of the jury, in determining the legal effect of the failure to reply (if in fact, he did not expressly agree, as some of the evidence tends to show, to take water at the meter rate) to the notice "meter to go in." Payment of meter rates during several years without objection, with notice, in connection with other evidence, might reasonably satisfy the jury, that there was an agreement to take water at meter rates, or at the rates charged. The court might properly instruct the jury as to the application of the evidence, but not as to the weight to be given it.

The first and fourth charges requested by the defendant are not in accordance with our views of the law, and were properly refused. The second charge requested was objectionable, in that it confined the jury to a consideration of the facts occurring on the 20th of October. The controversy grew out of an alleged overcharge for the quarter, embracing July, August and September, and the fact that the complaint laid the violation of the ordinance on the 20th of October, did not confine the evidence to that day.

The third charge requested by the defendant was in accord with our views of the law, and should have been given.

Reversed and remanded.