194 So. 538

## CITY OF BIRMINGHAM v. HOLT.

6 Div. 626.

Supreme Court of Alabama.

Feb. 22, 1940.

Rehearing Denied March 21, 1940.

W. J. Wynn and John S. Foster, both of Birmingham, for appellant.

Chas. W. Greer, of Birmingham, for appellee.

THOMAS, Justice.

The appeal is by the city to restrain the erection of signs along public streets. The case was submitted upon agreed statement of facts, which is specific and concise. No recital of the same is necessary.

The pleadings are well stated by appellant, in substance, as follows: The City of Birmingham filed a bill against Harry C. Holt seeking a mandatory injunction requiring said Holt to remove certain signs placed by said Holt upon the sidewalks of the City of Birmingham. It is alleged that signs were maintained on posts located in the sidewalks of the streets of the city at various intersections; that the signs obstructed and interfered with the use of the public streets, and constituted a public nuisance. It is further alleged that the contract entered into by and between the City of Birmingham and said Holt on the 6th day of April, 1937, authorizing the erection of said signs, was unauthorized, null and void: that prior to the institution of suit appellant offered to rescind and annul said contract, but its offer was refused and declined by the appellee. In addition to the prayer for a mandatory injunction, appellant prayed for a declaratory judgment regarding the rights and status of the parties under the contract and the law that obtains.

The bill was amended by striking therefrom paragraph five and demurrer was re-

filed to the amended bill, which was overruled.

Appellee filed an answer admitting that the metal board signs had been placed on the sidewalks of the city pursuant to the contract, that triangular pasteboard signs, containing advertising matter, had been attached to the metal board signs; and denied that the attaching of said triangular signs was done without the consent, permission or approval of appellant, but did not allege that the original contract authorized such triangular signs.

The answer further denied that the erection of the metal board signs on the sidewalks of the city at various intersections obstructed and interfered with the use of the public streets, denied that the maintenance of such signs constituted a public nuisance, and further denied that the appellant had no authority to make and enter into said contract.

The circuit court rendered a decree in which it held that th contract did not authorize the appellee to attach triangular signs to the bottom of the metal signs, provided for in the contract. The court enjoined the appellee from erecting in the future triangular signs, and ordered appellant to remove all triangular signs within thirty days from the date of the decree. The court taxed the costs against the appellee.

The appellant, City of Birmingham, appealed from the final decree rendered on October 31, 1939, as amended December 8, 1939.

This case was submitted, as aforesaid, upon an agreed statement to the effect that on the 6th day of April, 1937, the City of Birmingham and Harry C. Holt, doing business as Holt Sign Company, entered into an agreement which was to extend for a period of three years. Under its terms the city, through its then duly constituted commission, granted to the company permission to erect and maintain at such street intersections as the city may approve safety warning signs. The signs were to serve the public as street guides where located. The upper portion of the signs carries safety warnings, which are to be changed at least six times during each year; and the lower part is used for advertising purposes that may be offered by the company to various subscribers. The agreement further provides that the company shall not be required to pay any license or permit fees for the erection or maintenance of such signs.

The agreed statement of facts recites that the contract in question was executed pursuant to a resolution adopted by the Commission of the City of Birmingham composed of J. M. Jones, Jr., Lewey Robinson and W. O. Downs; and that on November 1, 1937, Eugene Connor and J. W. Morgan succeeded the said Robinson and Downs as Commissioners of the city. The agreed statement of facts further recites that the City Commission as composed of Jones, Morgan and Connor, who have in their official capacity by resolution made and entered of record of said commission, cancelled and annulled the contract and demanded that the signs erected by the company be removed.

As indicated this case, as submitted on the pleadings and the agreed statement of facts, presents two principal questions to the court for decision. Did the commission, composed of Jones, Robinson and Downs, have authority to bind their successors to permit the signs in question to remain on the public sidewalks of the city? And, does the city commission, irrespective of the question of one group of officers binding their successors, have the authority to permit public sidewalks of the city to be used for advertising purposes?

Answering the inquiries as propounded, did the commission, composed of Jones, Robinson and Downs, have authority to bind their successors in office to permit the signs in question to remain on the public sidewalks of the city? In 44 Corpus Juris, 88, the general rule is stated to be as follows: "Under the general rule a council may not by contract bind its successors to forego or to exercise their legislative functions. And the same is true of any city board having legislative authority. Nor has a city officer with discretionary power in the transaction of business in his department and the requisite authority to make contract with reference thereto a power to bind his successor in matters properly within the discretion of the person holding the office. This rule has been applied to contracts for personal or professional services to the city, and to the grant of exclusive franchises or privileges by the city."

No Alabama case is cited to this text; and no question here involved, insofar as a municipality is concerned, is found. The greater weight of authority is to the effect that "one state legislature cannot by any agreement bind itself or its successor in

office not to exercise the police power of the state." A discussion of this rule, and the reason on which it is based, is contained in Section 603, Constitutional Law, Vol. 12 Corpus Juris, p. 991. This text, after stating the rule which precludes one state legislature from binding itself or its successor not to exercise the police power of the state, pronounces that the same rule applies with reference to municipalities. It is as follows: "The police power of a state is an inherent attribute of its sovereignty with which it is endowed for the protection and general welfare of its citizens, and of which the state may not divest itself by contracts or otherwise. One state legislature, therefore, cannot by any agreement bind itself or its successors not to exercise the police power of the state. (Birmingham Mineral R. Co. v. Parsons, 100 Ala. 662 [666], 13 So. 602, 27 L.R.A. 263, 46 Am.St. Rep. 92. All contracts, whether made by the state itself, by municipal corporations, or by individuals, are subject to be interfered with, or otherwise affected by, subsequent statutes enacted in the bona fide exercise of the police power, and do not, by reason of the contracts clause of the constitution, enjoy any immunity from such legislation. (Crosby v. Montgomery, 108 Ala. 498, 18 So. 723; Blann v. State, 39 Ala. 353, 84 Am.Dec. 788.) And, in like manner, ordinances enacted by municipal corporations within the scope of the police power lawfully delegated to them are valid notwithstanding such ordinances affect contracts previously made by such corporations, or by individuals or private corporations. This rule is not only reasonable, but necessary, as a contrary rule would enable individuals, by their contracts, to deprive the state of its sovereign power to enact laws for the public welfare."

A leading case in which this principle was applied is that of Boston Beer Company v. Commonwealth of Massachusetts, 97 U.S. 25, 33, 24 L.Ed. 989, where the charter of the Boston Beer Company granted in 1928 included a franchise to manufacture malt liquors in Boston. A state statute subsequently adopted prohibited the manufacture and sale of intoxicating liquors. The beer company contended that the enforcement of the statute would constitute an impairment of its contractual rights embodied in the charter. In overruling this contention the Supreme Court of the United States said through Mr. Justice Bradley: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, salus populi suprema lex; and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself. Boyd v. Alabama [46 Ala. 329], [Id.], 94 U.S. 645 [24 L.Ed. 302]."

In view of the fact that this general rule applies to municipalities as it does to the state [Willett & Willett v. Calhoun County, 217 Ala. 687, 117 So. 311; Isbell v. Shelby County, 235 Ala. 571, 575, 180 So. 567; Corning v. Patton, 236 Ala. 354, 182 So. 39; First Nat. Bank v. City of Jacksonville, 236 Ala. 639, 184 So. 338], the question arises does the contract under consideration purport to bind the city not to exercise a police power? The contract in question purports to bind the city to permit the company to erect and maintain signs at various street intersections. It has been frequently recognized by the Supreme Court of Alabama, that streets of which sidewalks are a part, are within the police power of the city. City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352, 172 So. 114, 108 A.L.R. 1140.

The Code of the City of Birmingham of 1930 contains many regulations concerning streets and sidewalks. Many regulations concerning streets and sidewalks, which are contained in the present code, establish that the prohibition or regulation of signs upon public streets and sidewalks is a proper legislative function, and within the police powers of the Commission of the City of Birmingham. City Code, § 5785. If this be true, then the preceding city commission had no power to bind its successors to permit signs to be maintained on the sidewalks of the city. The agreement in question was invalid insofar as it attempted to bind the present city commission.

Does the city commission, irrespective of the question of one group of officers binding their successors, have authority to permit public sidewalks of the

city to be used for advertising purposes? It is held that a municipality has no inherent power to grant franchises or privileges to use its streets. 44 C.J., p. 973. It is also generally held that in the absence of a constitutional provision, charter or statutory provision so permitting a municipality has no power to authorize the use of its streets for a private purpose. 44 C.J., p. 983; Mobile v. Louisville & N. R. Co., 124 Ala. 132, 26 So. 902; City of Birmingham v. Hood-McPherson Realty Co., supra; State ex rel. Attorney General v. Louisville & N. R. Co. et al., 158 Ala. 208, 48 So. 391; Perry v. New Orleans M. & C. R. Co., 55 Ala. 413, 28 Am.St.Rep. 740.

In the case of City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352, 172 So. 114, 121, 108 A.L.R. 1140, this court recognized the distinction between a temporary and a permanent obstruction on or along the sidewalk, saying: "Judge Ruffin, a distinguished jurist, said, in State v. Edens, 85 N.C. (522), 526: 'Any permanent obstruction to a public highway, such as would be caused by the erection of a fence or building thereon, is, of itself, a nuisance, *though it should not operate as an actual obstacle to travel, or work a positive inconvenience to any one.* It is an encroachment upon a public right, and, as such, is not permitted by the law to be done with impunity.'"

In the Hood-McPherson case, supra, the court also held: "We have indicated that the municipality holds the *locus in quo,* not only for the municipality and its citizens, *but in trust for the public at large,* whose rights are not dependent upon acts of omission or commission of the city—that is, that nothing done or omitted to be done in the allowance of the unlawful obstructions on the street, which interfere with the use within the dedication of that highway, will estop the public or those with a special interest from having the same removed as a nuisance."

Many authorities from other jurisdictions are to the like effect. For example, in the case of State ex rel. Belt v. City of St. Louis, 161 Mo. 371, 61 S.W. 658, the Supreme Court of Missouri considered the question of whether or not a contract between the city of St. Louis and Belt, providing that said Belt should have the right to place waste.paper boxes on the sidewalks with advertising matter upon the sides of said boxes, was ultra vires. The contract provided that Belt should have the exclu-

sive right to place such boxes upon the streets of St. Louis; that he should procure advertisers; that he would keep the boxes clean; and that he would pay the city a percentage of the amount received from those subscribing for advertising space on such boxes. It was insisted by counsel for Belt that the interest of the city in keeping its streets cleaned rendered the use of the streets for such boxes a public use. The Supreme Court of Missouri in answering such contention, and in holding such contract ultra vires, said:

"In a word, the city has attempted to farm out its sidewalks and streets to a private person for advertising. Belt is free to make his own charges for advertising. No power is reserved to the city, even if it were a purpose to which it could devote the streets, to regulate the charges for advertisements. The legislative authority of the city could not thus be delegated, nor could it abdicate its control over the public streets, held by it in trust for the public, and create a monopoly in favor of one advertiser. Matthews v. City of Alexandria, 68 Mo. 115 [30 Am.Rep. 776]; Cooley, Const.Lim. (6th Ed.) 247–253; Gale v. Village of Kalamazoo, 23 Mich. 344 [9 Am. Rep. 80]; City of Oakland v. Carpentier, 13 Cal. 540. * * *

"We are clear that the streets cannot be devoted to such a private purpose. With what sort of propriety or fairness can the city farm out to Belt and his assigns the right to erect a box on a sidewalk in front of a business house, and not only thus deprive the proprietor, who has been compelled to construct the sidewalk and pay for improving the street in front of his premises, of the free access, ingress, and egress from his store, but to advertise the goods of a rival in the same line of business? The question furnishes its own answer. The city has no such power." 161 Mo. 371, 61 S.W. 658, 662.

In People v. Clean Street Company, 225 Ill. 470, 80 N.E. 298, 9 L.R.A.,N.S., 455, 116 Am.St.Rep. 156, the Supreme Court of Illinois held that the City of Chicago had no authority to enter into a contract giving a person exclusive right to place upon the streets waste boxes and to sell advertising space upon such waste boxes. The Supreme Court of Illinois, in its opinion, said: "It (the contract) provided that he should have full control and authority over the outside surface of the boxes, and might rent or sell it for advertising purposes to any

one he saw fit; the only limitation upon that right being that no advertisement should appear upon the boxes which was of an immoral and disreputable character. He was permitted to charge for such advertisements such prices as he might see fit, but was to account to the city for a certain portion of the amount received. By this contract he was authorized to use the streets and public places of the city for the purpose of advertising the private business of any·person or corporation, and have exclusive control over the same. The city authorities had no power to grant or delegate any such right or privilege. * * * The public authorities are merely the custodians or trustees for the public, which must be given the full use and enjoyment of all such streets without obstruction, and without authority of the city council to use or encroach upon them, or authorize others to do so for purely private purposes. By the ordinance and contract the city authorities sought and attempted to turn over the use of certain portions of the street for the. exclusive benefit of private individuals, and their action in this regard must·be held illegal and void." 225 Ill. 470, 80 N.E. 298, 301, 9 L.R.A.,N.S., 455, 116 Am.St.Rep. 156.

In Fifth Avenue Coach Co. v. City of New York, 58 Misc. 401, 111 N.Y.S. 759, the company entered into a contract with Railway Advertising Company, granting to the latter the privilege of maintaining advertising signs upon the exterior of the coaches operated by the coach company along Fifth Avenue. The coach company brought a suit to enjoin the City of New York from enforcing an ordinance prohibiting advertising trucks from being operated on certain streets in New York. The opinion is devoted to a consideration of whether the contract was ultra vires as to the Fifth Avenue Coach Company and whether the use of the streets for advertising purposes in the manner provided for by the contract *was a private or a public use.* Most of the opinion is devoted to a consideration of the former question. The court reached the conclusion that such use was for private purposes and was an improper use of the public streets, saying: "The leasing of the exterior of its vehicles for advertising is an unauthorized use of the streets for a private purpose. Such a· special and peculiar use has been condemned even after it has received the stamp of municipal approval. Hatfield v. Straus, 189 N.Y. 208,

82 N.E. 172; State ex rel. Belt v. City of St. Louis, 161 Mo. 371, 61 S.W. 658." 58 Misc. 401, 111 N.Y.S. 774, Id., 126 App.Div. 657, 110 N.Y.S. 1037.

In Guimond et al. v. President and Trustees of Monticello, Sup.Ct., 192 N.Y.S. 827, 829, the plaintiffs brought an action against the President and Trustees of the Village of Monticello to recover damages for the removal of signs which they had erected in front of their place of business between the sidewalk and the curb line of the street. The plaintiff, before construct-' ing said signs had obtained the consent of the proper authorities of the Village of Monticello for the erection of said signs. The signs were erected at such height from the ground as ·not to interfere with the· public use of the streets. After the signs had been erected the Board of Trustees of Monticello adopted an ordinance providing that all signs or brackets situated between the inside sidewalk line and the curb line on any street in Monticello constituted an obstruction to the sidewalks and streets. The ordinance further provided that any such signs should be removed, and provided further for a penalty upon those violating said ordinance. The court ·held that the President and the Board of Trustees were justified in removing said signs. The court said:

"In the case of Champlin v. Village of Penn Yan, 34 Hun. 33, the court, in speaking of an advertising banner strung across the street, says:

" 'The court referred to several Massachusetts cases, with approval, where hanging objects were supported by fastenings in the face of the buildings which were standing on the line of the street, which were held to be unlawful obstructions.'

"In Hume v. Mayor, etc., of City of New York, 74 N.Y. 264, it was held that an awning erected over the sidewalk of a street and resting for support on posts bedded in the street, erected for private purposes, if unauthorized, is an encroachment on the public street, and a nuisance which it is the duty of the city officers to remove.

" 'The obstruction of a public highway is an act which in law amounts to a public nuisance.' Wakeman v. Wilbur, 147 N.Y. 657, 42 N.E. 341.

"While 'the Legislature, by virtue of its general control over public streets and highways, has the power to authorize struc-

tures in the streets for the convenience of business that, without such authority, and under the principles of the common law, would be held to be encroachments and obstructions.' Hoey v. Gilroy, 129 N.Y. [132], at page 136, 29 N.E. [85],. 86.

"There is no claim in this case that the Legislature has authorized the erection of these signs.

" 'The owner of .land abutting upon a public street' has the right, 'when necessary, to encroach upon the primary right of the public to a limited extent and for a temporary purpose. * * * "Two facts, however, must exist to render the encroachment lawful: (1) The obstruction must be reasonably necessary for the transaction of business. (2) It must not unreasonably interfere with the rights of the public." ' Tinker v. New York, Ontario & Western Ry. Co., 157 N.Y. [312], 319, 51 N.E. [1031] 1032.

"This and similar cases cited in the plaintiff's brief, where the question was held to be a question of fact as to whether it was reasonably necessary for the transaction of business, and that it must not unreasonably interfere with the rights of the public, all relate to obstructions for a temporary purpose, and therefore have no application to the case at bar."

 The fact that a portion of the sign made the subject of the contract in question contained a safety warning as well as the private advertising matter did not prevent that obstruction from being an unlawful obstruction on the street or sidewalk that amounted to a subordination of the public right to a private use.

In McCraney, Doing Business as McCraney Oil Co., v. City of Leeds, Ala.Sup., 194 So. 151,[1] the subject was the right of maintenance of a gasoline station on the sidewalk of that municipality by an adjacent land-owner. The authorities are collected and distinction indicated between the contract right granting a proper franchise and a nuisance (Code 1923, § 9271 et seq.) unlawfully affecting such public way which is not incident to the use of the street, sidewalk or park way by the public.

That is to say, there are many decisions of this and other courts touching the granting of proper franchises and the denial of private permits which amount to a material obstruction of the public highway in the zone which the public are entitled to "move and use" in the due exercise of its permanent' right of use and enjoyment of such public way.

What we have said is in accord with Section 220 of the Constitution (Skinner's Alabama Constitution Annotated, § 220, p. 776) and several decisions in construction of same. For illustration we advert to the following decisions: City of Birmingham v. Hood-McPherson Realty Co., supra; First Nat'l. Bank v. Tyson, 144 Ala. 457, 39 So. 560; Id., 133 Ala. 459, 32 So. 144, 59 L.R.A. 399, 91 Am.St.Rep. 46; Costello v. State, 108 Ala. 45, 18 So. 820, 35 L.R.A. 303; Douglass v. City Council of Montgomery, 118 Ala. 599, 24 So. 745, 43 L.R.A. 376; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117; McLendon et al. v. Boyles Transit Co., 210 Ala. 529, 98 So. 581; City of Mobile v. Farrell, 229 Ala. 582, 158 So. 539 (a taxi cab ordinance); Williams v. City of Albany, 216 Ala. 408, 113 So. 257 (license of motor vehicle); City of Decatur et al. v. Meadors et al., 235 Ala. 544, 180 So. 550 (use of streets by taxi cab); Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51, (sale of property and franchise of suburban street railway); Ex parte Ashworth, 204 Ala. 391, 86 So. 84 (the temporary right for moving a house on or across a street).

The decree of the circuit court was in error in not granting appellant the relief prayed for in the bill of complaint as amended. The cause is reversed and a decree here rendered granting the relief prayed for in the city's pleading.

Reversed and rendered. .

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

---

[1] Ante, p. 144.