1 So.2d 894

McCRANEY v. CITY OF LEEDS.

6 Div. 662.

Supreme Court of Alabama.

April 10, 1941.

Rehearing Denied May 15, 1941.

Horace C. Wilkinson and Smith, Windham, Jackson & Rives, all of Birmingham, for appellant.

Bryant A. Whitmire and Exum & Whitmire, all of Birmingham, for appellee.

D. K. McKamy and Benners, Burr, McKamy & Forman, all of Birmingham, for one of respondents to cross-bill.

BOULDIN, Justice.

On former appeal the bill was sustained against demurrer. That decision, McCraney v. City of Leeds, 239 Ala. 143, 194 So. 151, discloses the substantial averments of the bill. They need not be here repeated.

The present appeal is from a final decree on pleadings and proof granting complainant relief.

We deem it fully settled in this jurisdiction that a permanent structure upon any portion of a public street, employed in the conduct of a private business on the street, may be abated as a public nuisance. It is invasive of the public right in the free and uninterrupted use of the street. When the free use of any portion of the street for the purposes to which it is dedicated is thus obstructed, it is no defense that the unobstructed portion of the street is sufficient to accommodate public travel, and does not materially endanger persons in the use of the street. It is not for the citizen to thus limit or abridge the paramount right of the public in the entire street.

Section 220 of our constitution is a recognition of inherent power in towns and cities to withhold consent, and to inhibit the use of a public street in any private enterprise. One other legal principle we deem pertinent to the case now presented. Any permit, express or implied, on the part of municipal authorities to so infringe upon the public right is revokable. The governing body can not divest itself of the governmental powers granted to the municipality to be exercised as a public trust. Each succeeding administration has its unimpaired powers and responsibilities in dealing with conditions as it finds them.

In addition to authorities cited in former opinion, we call attention to the following: City of Birmingham v. Holt, 239 Ala. 248, 194 So. 538; City of Birmingham et al. v. Hood-McPherson et al., 233 Ala. 352, 172 So. 114, 108 A.L.R. 1140; Hover v. Oklahoma City et al., 133 Ok. 71, 271 P. 162; Palace Garage et al. v. Oklahoma City, 131 Okl. 122, 268 P. 240; Sander et al. v. City of Blytheville, 164 Ark. 434, 262 S.W. 23; Rowe v. City of Cincinnati et al., 26 Ohio App. 87, 159 N.E. 492; 7 Blashfield, Automobile Law, Permanent Edition, § 4951; 20 R.C.L. 386.

"All municipalities in the State of Alabama may maintain a bill in equity in the name of the city to abate or enjoin any public nuisance injurious to the health,

morals, comfort or welfare of the community, or any portion thereof." Code of 1923, § 9298; 4 McQuillin, Mun.Corp. § 1475; and authorities cited.

The evidence, without substantial conflict, sustained the material averments of the bill; those upon which the right to injunctive relief depends under the foregoing authorities.

The main defense is rested upon averments of the answer to the effect, that in the circumstances, this proceeding is arbitrary and discriminatory as against respondent; that he is singled out while others in like position are left free to conduct competitive business with facilities similarly located and impinging upon the free use of the street by the public.

 A municipality, in the exercise of its police powers, may not, by arbitrary, discriminatory, and oppressive action deny the citizen the equal protection of the law, nor deprive him of personal or property rights without due process of law.

This principle runs through our decisions as elsewhere. The application of same to the case in hand is oftentimes one of the most difficult problems before the courts.

 Broadly speaking, such arbitrary abuse of power is not to be presumed; public authorities should not be denied a measure of discretion, in the application of principles of law and equity to conditions best known to them; the public welfare is not to be sacrificed in the interest of the individual. If reasonable men may differ, the action of the chosen governing body, will, as a rule, be upheld. Gilchrist Drug Co. v. City of Birmingham et al., 234 Ala. 204, 174 So. 609, 111 A.L.R. 103, and authorities cited.

 The cause was heard on oral testimony before the court. In case of conflict, we must indulge the usual presumption in favor of the finding of the trial court.

The City of Leeds is a town of some three thousand inhabitants. It had a general ordinance penalizing any person "who creates * * * a nuisance * * * on any street, or * * * causes or permits the existence of anything calculated to endanger the safety of the city, or the lives, health or comfort of the citizens."

There was no ordinance regulating the location and operation of filling stations furnishing fuel and oil, and otherwise servicing motor vehicles.

From time to time for many years past such filling stations have been installed and operated without special permit or active supervision as to their location with reference to street lines.

At the time this controversy arose, there were some eight filling stations operating in the town. Their location with reference to property and street lines is not in controversy. Original photographs sent up for our inspection disclose these matters fully.

Four of the stations thus shown, having one gasoline pump each, were located on the parkway between the sidewalk and curb. Two of them were out of main business district, rather in outskirts of the town. One, however, being on First Avenue, carrying the traffic on Bankhead Highway running from Atlanta to Birmingham. The other two single pump stations located in the parkway were on First Avenue in the business district of the town.

One of these, however, according to complainant's evidence, was installed at the request of this respondent, at a point where a pump had been previously operated, and the underground tank remained. The other, according to like evidence, was installed pending this suit, over the objection of the administrative authorities, and with warning this would be another case. Other four stations were of the drive-in type, with two or more pumps, with service lanes outside and inside the line of pumps, as generally seen in towns and cities.

These pumps were not on any portion of the street, but back of the property line. The objectionable feature is in placing the pumps so near the property line, that cars being refueled while standing on the outer lane would obstruct the sidewalk necessarily in some degree, and sometimes quite fully. Air appliances were also located on the parkway, near the curb.

It appears the Mayor and street supervisor, acting as administrative officers, with the approval of the council, had concluded this encroachment on the streets by filling stations should not be further extended. Accordingly, an application for installation of a drive-in station similar to those in operation was refused, and the applicant proceeded to erect the station on proper lines.

With this background we deal with the facts touching this respondent. He had owned and operated for some years a drive-in station at the Intersection of First Avenue and Ashville Road. This station had

and still has three pumps with outer and inner service lanes, both back from the property line, avoiding, unless in unusual instances, any obstruction of any part of the sidewalks of adjoining streets.

Without notice or permit respondent proceeded to install two pumps, one for gasoline, one for kerosene, on the parkway near the curb line on First Avenue. Thus cars and trucks are refueled and serviced while parked along the curb on the paved street for traffic by vehicles. Disregarding the protest of the Mayor on his discovery of same, the council passed a resolution declaring this installation and use of the street a public nuisance, and ordering respondent to remove it within five days. This suit followed. No general order or ordinance was enacted, directed to remedying the situation as to other stations. Neither has there been any action of the governing body expressive of a purpose not to do so, or to grant other operators immunity when the powers and duties of the governing body are clarified by this suit. We should note the proprietors of a drive-in station diagonally across this intersection from respondent's station, proceeded, while the suit was still pending to reconstruct same so as to avoid encroachment on the sidewalk in refueling cars, &c. Two conditions obtain in respondent's case, not present in the others.

One is the location of the public school just across Ashville Road, with some eight hundred children of all grammar and high school grades. Precautions for protection of groups of school children, especially of tender years, is recognized as a police obligation generally. It is inferable that long trucks or trailers being refueled at these curb pumps project into the street crossing so as to obstruct the view of pedestrians crossing First Avenue on the east side of Ashville Road, and cause them to detour into the zone for vehicular travel.

The second is the presence of a fire hydrant at this point, proper access to which is manifestly obstructed at times. The city was under no duty to remove or consent to the removal of this hydrant to accommodate respondent in the premises.

In dealing with arbitrary and discriminative action in such cases, we observe such rule does not rest upon any right of one wrong-doer to defend upon the ground that others are also wrong-doers; nor upon any lack of vigilance in protecting the public. It is not for the citizen to excuse his own invasion of a public right upon the ground that the public is not being protected in that regard. This responsibility is on those chosen to act for the public.

Arbitrary discrimination in a case like this rests upon giving immunity to others in maintaining like conditions, thus imposing restrictions on the one and not the other, giving an advantage to competitors in business.

If the governing authorities of Leeds, confronted with conditions tolerated through previous years, and being multiplied, deemed it advisable to proceed by injunction in the case regarded conspicuous and hurtful, is it to be assumed that when the city is sustained therein, appropriate proceedings will not follow to protect the public interest all along the line?

In the light of all the circumstances, and in view of the presumption on the trial court's finding of fact, we are of opinion the city should not be denied relief, and the decree should be affirmed.

Appellant relies largely upon the authority of the City of Pierce v. Schramm, 116 Neb. 263, 216 N.W. 809, in which the Supreme Court of Nebraska held discriminatory and arbitrary an injunction suit on facts having much in common with this case. We observe the attention of the trial court was directed to this authority. That decision discloses facts, deemed of controlling weight, not present here. We are not in accord with the view of appellant, that simultaneous and similar action had to be taken as to all filling stations in some respects invading the public right in the streets. Probably none of them had all the objectionable incidents of this case. The manner of working out the situation is not to be narrowed to one exclusive procedure, but leeway given to accomplish just ends in the varied circumstances.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.