Timothy William Flynn filed a complaint for an injunction against Operation New Birmingham (hereinafter "ONB") and the City of Birmingham, seeking to enjoin ONB and the City of Birmingham from interfering with the operation of Flynn's sidewalk vending business; the trial court denied the injunction. ONB had previously issued a permit to allow Flynn to maintain a sidewalk hot dog cart, but it had later forced him to remove the cart after the owner of a nearby restaurant complained to ONB that the cart was interfering with the restaurant's business. In its order denying the injunction, the trial court held that the City of Birmingham had no authority to license or otherwise permit street vendors and that Flynn therefore could not conduct his business in its previous location or on any other street. The trial court thereby revoked the license ONB had issued. ONB appeals; Flynn cross-appeals.
The record reveals these facts: In March 1989, the mayor of the City of Birmingham approved a resolution adopted by the city council authorizing the City to enter into a contract with ONB to provide for sidewalk vending carts. The resolution stated that ONB "must coordinate the vending carts with the overall promotional programs of the City, civic organizations, merchant associations, and downtown businesses. . . ."
In April 1991, Flynn contacted ONB to learn how he could set up a street vending hot dog business. Kay Lorino, development coordinator for ONB, advised him to purchase a cart and have it approved by the Jefferson County Health Department; he did so, at a cost of $4500. Lorino directed him to choose a location for the vending cart and informed him that he was required to be one and one-half blocks away from an "established" business. Lorino thereafter approved Flynn's chosen site on the corner of 6th Avenue South and 21st Street in Birmingham. In issuing a one-year permit to Flynn, Lorino told him that ONB was formulating written rules for issuing permits, but that those rules were still in draft form. One of those rules required street vendors to remove their carts from approved sites if ONB received a complaint about such carts from an established business. Flynn thereafter operated his cart daily for about two and one-half weeks; then the owner of a nearby restaurant complained to ONB that Flynn was impinging on his established business. Lorino informed Flynn that if he did not move the cart, ONB would revoke his license and perhaps have him arrested. Flynn immediately removed his cart and filed his complaint for injunctive relief.
Flynn's and ONB's arguments as to the first issue on appeal are identical. Both contend the trial court erred in holding that the City of Birmingham has no authority under Alabama law to permit street vendors. To support their arguments, Flynn and ONB rely upon the Constitution of Alabama, Art. XII, § 220, which provides:
 "No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without *Page 1318 
first obtaining the consent of the proper authorities of such city, town, or village."
This constitutional provision is codified in Ala. Code 1975, § 11-49-1:
 "No person, firm, association or corporation shall be authorized to use the streets, avenues, alleys and other public places of cities or towns for the construction or operation of any public utility or private enterprise without first obtaining the consent of the proper authorities of said city or town."
In its order denying injunctive relief, the trial court held that the City of Birmingham does not have power under § 220 to allow public streets to be used for a private retail business. The trial court relied on a line of earlier cases, including City of Birmingham v. Holt, 239 Ala. 248, 194 So. 538 (1940), wherein the City sought to enjoin an advertiser from maintaining permanent advertising signs on the sidewalks of various intersections. The City had originally contracted with the advertiser to allow the signs, but later determined that the signs obstructed traffic and were a public nuisance and thus sought to rescind the contract. This Court noted the general rule that "a municipality has no inherent power to grant franchises or privileges to use its streets" and, "in the absence of a constitutional provision, charter or statutory provision . . . no power to authorize the use of its streets for a private purpose." Holt, 239 Ala. at 252, 194 So. at 538. The Court held that the permanent advertising signs were an unlawful obstruction and that the contract permitting them amounted to a subordination of the public right to a private one. 239 Ala. at 254, 194 So. at 543.
The next year, in McCraney v. City of Leeds, 241 Ala. 198,1 So.2d 894 (1941), this Court again considered the authority of a city over its streets under § 220. In McCraney, the City of Leeds sought to remove gas pumps installed on the parkway between a street and a sidewalk. The Court first determined that § 220 does recognize the inherent power of towns and cities to withhold consent and to inhibit the use of a public street in any private enterprise; however, citing Holt, the Court held that this inherent power did not authorize a city to issue permits to allow a private business to conduct business in a permanent structure on any portion of a public street. The Court determined that a permanent structure upon any portion of a public street employed in private business could be characterized as a public nuisance, because it would invade the public right to free and uninterrupted use of the street. As in Holt, the Court held that a municipality could not subjugate this public right to accommodate a private interest.
This Court has since reaffirmed that it is wholly within the province of the municipal authorities to grant the municipality's consent or to withhold it from a certain group or individual seeking to use public streets for private or public enterprise. Bush v. City of Jasper, 247 Ala. 359,24 So.2d 543 (1945). In Crabtree v. City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974), the Court summarized the effect of § 220:
 "It is well settled in this state that the right to use the public streets for hire is not a right of public or private enterprise but is a privilege — generally called a franchise — subject to the consent and regulation of the municipality. . . . In such use of the public streets, it is wholly within the province of the municipal authorities under § 220, Alabama Constitution, to grant its consent or withhold it to any person or group. This, the municipality, in the exercise of this authority granted by § 220, coupled with the police powers granted municipalities by the state, has the irrevisable discretion to determine whether, and to what extent, a service is needed, and to fix and determine the streets and to name the grantee of such right. . . . [T]he municipalities are only limited in the exercise of such discretion by §§ 22 and 228 of the Constitution which restricts the power to grant franchises to those that are not exclusive or perpetual."
292 Ala. at 689, 299 So.2d at 287 (citations omitted).
Based on the foregoing principles, we conclude that § 220 does give a municipality *Page 1319 
authority to issue permits allowing for street vending, provided that such vending does not constitute a public nuisance.
In its order, the trial court cited two early cases from other jurisdictions to establish that pushcarts or street vending establishments are public nuisances. In Strong v.Sullivan, 180 Cal. 331, 181 P. 59 (1919), the California Supreme Court held that a lunch wagon situated directly in front of an established restaurant and affecting ingress to and egress from the restaurant building constituted a public nuisance. In Commonwealth v. Morrison, 197 Mass. 199,83 N.E. 415 (1908), the Massachusetts Supreme Court held that a lunch wagon parked in city streets for 10 hours at a time was a public nuisance and, further, was in violation of a local ordinance.
We do not find these authorities persuasive here. There is no local ordinance prohibiting street vending in the City of Birmingham. The rules and regulations promulgated by ONB to regulate the vending carts do not contemplate licensing a permanent structure, nor do they allow carts to hinder public traffic along the sidewalks and into neighboring businesses. The regulations provide, in pertinent part:
 "7. Established businesses have first priority at all times. Vending carts are not allowed to sell within a one-half to two-block radius of established businesses selling the same or a similar product.
 "8. If an established business (business occupying private property), or its customers, has a complaint concerning the vending cart, the permit for that cart is automatically subject to revocation.
 "9. To avoid pedestrian congestion, vending carts shall not block any thoroughfare or public right-of-way at any time."
From these regulations, it is clear that the City of Birmingham has taken steps to assure that it does not use the authority of § 220 to license a public nuisance. When ONB did receive a complaint concerning Flynn's cart, it immediately sought to abate Flynn's activities before they could become a nuisance. In view of the regulations it has enacted and adhered to, as well as the applicable Alabama law, we hold that the City of Birmingham is properly authorized to license street vendors.
Flynn next argues that ONB's regulations deprive vendors of their constitutional right to due process because, he says, they empower ONB to revoke a vendor's license without notice or an opportunity to be heard. The trial court pretermitted addressing this issue, based on its ruling that the City of Birmingham had no authority to license street vendors. We remand this cause for further proceedings as to Flynn's constitutional claim.
1911927 REVERSED AND REMANDED.
1911966 REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES and ADAMS, JJ., concur.