853 So.2d 249 (2002)
Larry McCAMMON
v.
Lynn YOUNGBLOOD et al.
2010193.
Court of Civil Appeals of Alabama.
November 22, 2002.
*250 Larry McCammon, pro se.
Gregory O. Griffin, Sr., chief counsel, Steve M. Sirmon, asst. atty. gen., and Hugh Davis, deputy atty. gen., for appellee Alabama Board of Pardons and Paroles.

On Application for Rehearing
PER CURIAM.
The opinion of September 6, 2002, is withdrawn and the following is substituted therefor.
Larry McCammon, an inmate at an Alabama correctional facility, acting pro se, filed a complaint in the Circuit Court of Montgomery County against Lynn Youngblood, Alma Berry, Louis Grimes, and the Alabama Board of Pardons and Paroles ("the Board"). In his complaint, McCammon alleged that the defendants had improperly caused his parole to be revoked and that they had thereby violated his civil rights. Judge Charles Price, a judge for the Montgomery Circuit Court, entered an order dismissing McCammon's complaint against the Board and transferring, on the basis of alleged improper venue, the action to the Jefferson Circuit Court (hereinafter "the trial court"). McCammon has not appealed the dismissal of his claims against the Board.
The remaining defendants (hereinafter "the defendants") filed a motion in the trial court seeking the dismissal of McCammon's claims against them. In their motion to dismiss, the defendants explained that Youngblood was McCammon's parole officer; that Berry was a parole officer serving as a "parole court hearing officer"; and that Grimes was, at all material times, either a "parole court hearing officer" or a member of the Board. McCammon filed an opposition to the defendants' motion to dismiss, but he did not amend his complaint.
The trial court conducted a hearing on the motion to dismiss. The trial court refused to have McCammon transferred from prison to attend the hearing, but it ordered that McCammon would be allowed to "make his presentation by mail." On November 14, 2001, the trial court entered a judgment granting the defendants' motion and dismissing McCammon's complaint. In its judgment, the trial court found that the defendants were entitled to absolute or discretionary immunity from liability on McCammon's claims. McCammon, acting pro se, appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.

*251 "When the sufficiency of a complaint is at issue, this Court will liberally construe the complaint in favor of stating a claim for relief. `Dismissals under Rule 12(b)(6) should be granted sparingly, and such a dismissal is proper only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief.' Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986). `"`Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff.'"' Boswell v. Liberty Nat'l Life Ins. Co., 643 So.2d 580, 581 (Ala. 1994), quoting Grant v. Butler, 590 So.2d 254, 255 (Ala. 1991), quoting in turn Greene County Bd. of Educ. v. Bailey, 586 So.2d 893, 897-98 (Ala.1991).
"`Unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief under some cognizable theory of law, the court should not grant a motion to dismiss a complaint.' American Auto. Ins. Co. v. McDonald, 812 So.2d 309, 311 (Ala. 2001), citing Rice v. United Ins. Co. of America, 465 So.2d 1100 (Ala.1984). In our review, we need not determine `whether the plaintiff will ultimately prevail, only whether he has stated a claim on which he may possibly prevail.' Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985)."
Radenhausen v. Doss, 819 So.2d 616, 619-20 (Ala.2001).
The allegations against the defendants in McCammon's complaint are not a model of clarity. In his complaint, McCammon asserts claims of false arrest, false imprisonment, and trespass against all of the defendants. However, in his complaint, McCammon makes no specific assertions regarding the conduct or actions of either Grimes or Berry to support the claims he asserts against those defendants. We also note that although McCammon purported to assert claims under 42 U.S.C. § 1983 against all of the defendants, he made no specific allegations against Grimes or Berry with regard to a § 1983 claim. Although the trial court granted the motion to dismiss on the basis of the defendants' being entitled to State-agent immunity, this court may affirm a judgment that is correct, even where the trial court states an incorrect basis for that judgment. Morrison v. Franklin, 655 So.2d 964 (Ala.1995); Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala.1992); Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988). McCammon's complaint contained no specific allegations against Grimes or Berry. Therefore, as to those two defendants, the complaint failed to state any claim upon which relief could be granted. See Rule 12(b)(6), Ala. R. Civ. P. Therefore, although it stated the wrong reason for its judgment as to Berry and Grimes, the trial court's dismissal of those two defendants is due to be affirmed. Morrison v. Franklin, supra; Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., supra; Smith v. Equifax Servs., Inc., supra.
We address the remainder of McCammon's arguments only to the extent that they address claims against Youngblood. McCammon alleges that Youngblood improperly charged him with using illegal drugs without first conducting a drug-screen test and alleges that all of the defendants caused him to be "illegally jailed." McCammon also contends that Youngblood caused him to be illegally *252 jailed, thereby knowingly violating his civil rights.
Youngblood argues that she is entitled to absolute immunity with regard to her actions related to McCammon's claims[1]; she cites Hughes v. Chesser, 731 F.2d 1489 (11th Cir.1984), in support of her argument. In Hughes v. Chesser, Hughes filed a complaint asserting a § 1983 claim against Chesser, a probation officer, alleging that Chesser had falsified his presentence report concerning Hughes. The district court determined that Chesser was entitled to absolute immunity. The United States Court of Appeals for the Eleventh Circuit affirmed, holding that Chesser had absolute immunity in submitting the presentence report, because that report was made at the direction of a court and constituted a "narrow function" of Chesser's duties as a probation officer. Hughes v. Chesser, 731 F.2d at 1490.
In reaching its holding, the court in Hughes v. Chesser, supra, relied on Spaulding v. Nielsen, 599 F.2d 728 (5th Cir.1979). In Spaulding v. Nielsen, supra, the United States Court of Appeals for the Fifth Circuit held that a probation officer was entitled to immunity with regard to his submission of a presentence report to a court made at the direction of a court. In a footnote, the Fifth Circuit expressly limited its decision in that case to immunity for actions taken with regard to presentence reports, stating, "[w]e have no occasion to decide today, and do not decide, whether immunity will shield probation officers from civil liability for official activities apart from the presentence report process." Spaulding v. Nielsen, 599 F.2d at 729 n. 2.
Further, in A.M. v. Grant, 889 F.Supp. 1495 (M.D.Ala.1995), the court refused to afford a defendant immunity under the authority of Spaulding v. Nielsen and Hughes v. Chesser. The defendant in that case had allegedly caused the juvenile plaintiff to be improperly detained in a juvenile detention facility. The court refused to extend the holdings of Spaulding v. Nielsen and Hughes v. Chesser to afford immunity under the facts alleged in that action. A.M. v. Grant, 889 F.Supp. at 1503. In reaching it decision in A.M. v. Grant, the court noted that after the release of Spaulding v. Nielsen, supra, the Fifth Circuit had later, in Galvan v. Garmon, 710 F.2d 214, 215 (5th Cir.1983), denied absolute immunity to a probation officer who had mistakenly caused the arrest and incarceration of a person on parole.
In Galvan v. Garmon, supra, the Fifth Circuit distinguished the facts of that case from those of Spaulding v. Nielsen, supra, by stating "[w]hereas in Spaulding the probation officer was acting at the direction of the court during the presentence report process, in the immediate case the probation officer acted at her own initiative and at a different phase of the criminal process less intimately associated with the judiciary." Galvan v. Garmon, 710 F.2d at 215. Therefore, the court held, the facts of the case did not "present the sort of `special functions or constitutional status [which] requires complete protection from suit.'" Id. at 216 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The court concluded that the defendant probation officer was entitled to only qualified immunity under the facts of the case.
*253 Hughes v. Chesser and Spaulding v. Nielsen afford absolute immunity to a probation officer's filing of a presentence report. Youngblood has not directed this court to any case that has extended that absolute immunity to fact situations in which a parole officer's actions went beyond submitting, "at the direction of [a] court," a presentence report. See Hughes v. Chesser, 731 F.2d at 1490. In both Galvan v. Garmon, supra, and A.M. v. Grant, supra, both of which involved conduct more similar to that alleged in this case than the conduct described in Hughes v. Chesser and Spaulding v. Nielsen, the courts declined to extend absolute immunity to the defendants in those actions. Given the allegations against Youngblood contained in McCammon's complaint and the foregoing authority, we must conclude that Youngblood is not entitled to absolute immunity under the authority of Hughes v. Chesser or Spaulding v. Nielsen. We next address whether Youngblood is entitled to qualified, or State-agent, immunity.
We first address McCammon's tort claims against Youngblood. In Ex parte Cranman, 792 So.2d 392 (Ala.2000), a plurality of our supreme court set forth a new test for determining when a State employee or agent who is sued in his or her individual capacity on a tort claim is entitled to "State-agent immunity." Some instances in which a State agent "shall" be immune from civil liability in his or her individual capacity include situations in which the State agent "exercis[es] judgment in the enforcement of the criminal laws of the State," and in which the State agent "exercis[es] judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners." Ex parte Cranman, 792 So.2d at 405. In formulating that test, our supreme court also explicitly defined situations in which a State agent is not entitled to State-agent immunity:
"[A] State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
Ex parte Cranman, 792 So.2d at 405. In Ex parte Butts, 775 So.2d 173 (Ala.2000), a majority of our supreme court adopted the State-agent immunity test set forth in Ex parte Cranman, supra.
McCammon's complaint alleged that Youngblood's actions improperly caused his probation to be revoked. In his complaint, McCammon alleges that he agreed to take a urine-analysis test as a condition of his probation. McCammon contends that after agreeing to take the test, he had a conversation with Youngblood and that, thereafter, Youngblood placed him in detention without allowing him to take the required test. McCammon alleges that Youngblood's actions caused his probation to be revoked and that she failed to provide proper evidence to support that revocation. He alleged claims of false arrest, false imprisonment, and trespass against Youngblood.
After examining the entirety of McCammon's state-law claims against Youngblood, we must conclude that the trial court's dismissal of those claims was not appropriate. McCammon's complaint sufficiently set forth claims upon which there *254 is a possibility he could prevail. Radenhausen v. Doss, supra.
"A dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. A dismissal is different from a summary judgment, and more difficult to obtain than a summary judgment. To get a summary judgment, the movant must show that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law."
Green v. Nemish, 652 So.2d 243, 244 (Ala. 1994) (citations omitted). In so holding, we do not comment on the merits of McCammon's state-law claims against Youngblood or exclude the possibility that those claims will be disposed of on a motion for a summary judgment; we merely conclude that, given the nature of McCammon's claims, the dismissal of those claims at this stage of the litigation was premature.
We next address McCammon's claim that Youngblood's actions violated his civil rights under 42 U.S.C. § 1983.
"In deciding whether a public official ... is entitled to qualified immunity in a § 1983 action, this Court employs the following two-step analysis:
"`"1) The defendant public official must first prove that `he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'
"`"2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions `violated clearly established constitutional law.'"'

"[Roden v. Wright,] 646 So.2d [605,] 610 [(Ala.1994) ], quoting Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir.1988). (Citations omitted.) In Point Properties, [Inc.] v. Anderson, [584 So.2d 1332,] 1338-39 [ (Ala.1991) ], [our supreme court], quoting Stewart v. Baldwin County Board of Education, 908 F.2d 1499, 1503 (11th Cir.1990), explained that `"the relevant question ... is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred."' Th[e] Court went on to note that `"the qualified immunity defense provides ample protection to all except the plainly incompetent or those who knowingly violate the law."` 584 So.2d at 1339, quoting Stewart, supra."
Couch v. City of Sheffield, 708 So.2d 144, 155 (Ala.1998). In interpreting the above-quoted test, this court has stated that "[l]iability does not attach to a government agent unless his `act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing.'" Caldwell v. Brogden, 678 So.2d 1148, 1151 (Ala.Civ.App.1996) (quoting Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir.1994)).
It is undisputed that, at the time of the alleged incidents that form the basis of McCammon's action, Youngblood was acting within her discretionary authority. See Couch v. City of Sheffield, 708 So.2d at 155. With regard to his § 1983 claim, McCammon has alleged that Youngblood "knew or should have known" that her actions constituted a violation of his civil rights. See Id. Although this court does not comment on the merits of McCammon's § 1983 claim against Youngblood and cannot say whether McCammon will *255 ultimately prevail on his § 1983 claim, we must conclude that as to that claim, McCammon has alleged a set of facts upon which it is possible that he might prevail. See Radenhausen v. Doss, supra; Green v. Nemish, supra. We must conclude that the trial court erred in dismissing McCammon's § 1983 claim against Youngblood. Therefore, we must reverse the trial court's dismissal of McCammon's claims against Youngblood and remand this action to the trial court for further proceedings.
OPINION OF SEPTEMBER 6, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs specially.
MURDOCK, J., concurs in the result.
CRAWLEY, Judge, concurring specially.
I concur in the affirmance of the dismissal of McCammon's state-law tort and § 1983 claims against Berry and Grimes. I also concur in the reversal of the dismissal of his state-law tort and § 1983 claims against Youngblood; however, I note that the reversal of the dismissal of McCammon's state-law tort claims against Youngblood is further supported by the principles outlined by our supreme court in Phillips v. Thomas, 555 So.2d 81, 86 (Ala.1989). See also Ex parte Butts, 775 So.2d 173, 177 & 178 (Ala.2000).
NOTES
[1] Youngblood states that her actions included "submitting a written report to the Board [of Pardons & Paroles] (wherein she accused McCammon of violating parole), ... issuing a writ of arrest ..., and ... testifying before the court [that ultimately revoked McCammon's parole]."