THOMPSON, Presiding Judge.
The Alabama Department of Human Resources (“DHR”), on behalf of Tammy Yancey (“the mother”), appeals from a judgment reinstating the commercial driver’s license of Ronald Yancey (“the father”). The father’s driver’s license had been suspended because of his failure to pay child support.
The record indicates the following. On September 23, 2008, the father was found in contempt for willful failure to pay child support. He was sentenced to jail, but the sentence was stayed provided the father paid his monthly child-support obligation of $466 plus $90 a month toward his ar-rearage. A little more than a year later, on October 28, 2009, DHR filed a petition on behalf of the mother seeking to lift the stay of incarceration. In the petition, DHR alleged that the father had failed to pay his child support as ordered and that his arrearage had reached $46,157.45. Because the father had failed to pay his child support for more than six months, DHR had suspended his driver’s license, as authorized by § 30-3-171, Ala.Code 1975.
On October 29, 2009, the trial court lifted the stay and ordered that the father be arrested and incarcerated pending a court order. The order provided that the father could purge himself of contempt and be released from jail if he paid the arrearage in full. The father was arrested and placed in jail on November 3, 2009.
On January 14, 2010, an evidentiary hearing was held on the issue of the father’s contempt. At that time, his arrear-age was approximately $48,000, and his last child-support payment had been made in March 2009. The father had been approved for work release while he was in jail; however, no work was available.
The father testified that he previously had been employed in construction but *417 that he had not had recent communication with the company for which he had worked. A DHR caseworker identified in the record only as “Ms. Morris” told the trial court that she had spoken with the father’s former employer, who did not know whether there would be work available for the father. The father said he had been doing odd jobs before he was arrested. He worked as a truck driver in 2008, he said, but he lost that job when his driver’s license was suspended because of his failure to pay child support.
The trial court noted that the father’s “ability to earn income is much greater if [he was] driving a truck ... and that [he] cannot drive a truck so long as [his] license is suspended.” Morris informed the trial court that the father’s license would be reinstated if he paid $1,112 — equal to two months’ child support and two payments toward his arrearage — and made his current child-support and arrearage payments. Morris said that the father also would have to pay the Department of Public Safety, the State agency responsible for issuing drivers’ licenses, $200 to have his license reinstated. If the father failed to keep up with his child-support and arrear-age payments, Morris said, his driver’s license would be suspended again.
At the hearing, the trial court said it would order DHR “to do whatever is necessary to reinstate [the father’s] license and ... orderf ] [the father] to come up with that money immediately and do the part that [he has] to do.” The attorney for DHR then told the trial court that reinstatement of a driver’s license suspended for nonpayment of child support was “purely administrative” and that suspension was automatic for anyone whose child support was in arrears more than six months. She pointed out that the father had not made use of the administrative remedies available to him for having his license reinstated and that the trial court did not have the authority to reinstate his license. The trial court responded as follows:
“I understand your position; however, the [DHR] and child are not going to get a dime if [the father] can’t work, and if he doesn’t have his license and he’s just going from one little job to another hoping construction is going to open up, [DHR] and the child are not going to get any money, and I see no benefit to continue to hold him in jail.”
The attorney for DHR asked the trial court to clarify whether it was ordering the father to pay the two months’ child support and arrearage payments that, pursuant to administrative regulations, he was required to pay before his license could be reinstated. The trial court stated that the father did not have the money to make the required payment and that the court was “not going to order him to pay it.”
On January 25, 2010, the trial court entered a written order providing that DHR “is to immediately release [the father’s] commercial driver’s license” and denying DHR’s “request” that the father pay two months’ child support and arrearage payments. The trial court also ordered that the father be released from jail. DHR, on behalf of the mother, appeals.
DHR, on behalf of the mother, contends that the trial court erred as a matter of law when it ordered DHR to reinstate the father’s driver’s license. Specifically, DHR argues, the trial court did not have the authority to reinstate the father’s driver’s license. Because the father’s license had been suspended pursuant to administrative regulations, DHR says, the administrative procedures for reinstatement had to be followed.
Whether the trial court had the authority to order DHR to reinstate the father’s *418 driver’s license in this case is a question of statutory construction and, thus, purely a question of law. “Because the issue before us presents a pure question of law, we review the matter de novo, without any presumption of correctness.” Ex parte Byrom, 47 So.3d 791, 794 (Ala.2010) (citing Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197, 200 (Ala.2001)).
This court’s inquiry into questions of statutory construction involves the following considerations:
“ ‘[I]t ⅛ this Court’s responsibility in a case involving statutory construction to give effect to the legislature’s intent in enacting a statute when that intent is manifested in the wording of the statute. Bean Dredging[, LLC v. Alabama Dep’t of Revenue], 855 So.2d [513] at 517 [ (Ala.2003) ]. ... “ ‘If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’ ” Pitts v. Gangi, 896 So.2d 433, 436 (Ala.2004) (quoting DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998), quoting in turn earlier cases). In determining the intent of the legislature, we must examine the statute as a whole and, if possible, give effect to each section. Employees’ Retirement Sys. of Alabama v. Head, 369 So.2d 1227, 1228 (Ala.1979).’
“Ex parte Exxon Mobil Corp., 926 So.2d 303, 309 (Ala.2005). Further,
“‘when determining legislative intent from the language used in a statute, a court may explain the language, but it may not detract from or add to the statute. Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1045 (Ala.1991). When the language is clear, there is no room for judicial construction. Employees’ Retirement System, [v. Head], 369 So.2d [1227,] 1228 [ (Ala.2002) ].’
“Water Works & Sewer Bd. of Selma, 833 So.2d 604, 607 (Ala.2002).”
Ex parte Birmingham Bd. of Educ., 45 So.3d 764, 767 (Ala.2009). Further, our supreme court has said recently of statutory construction:
“ ‘Our inquiry is governed by settled principles of statutory construction:
“ ‘ “ ‘The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).’ ” ’
“Bright v. Calhoun, 988 So.2d 492, 497 (Ala.2008) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala.2006), quoting in turn Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala.1979) (emphasis omitted)).
“To determine legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, then there is no room for judicial construction. Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001).”
Fluker v. Wolff, 46 So.3d 942, 953 (Ala.2010).
The statutes at issue in this case involve the Legislature’s authorizing DHR to suspend or revoke a person’s driver’s license for failure to pay child support. § 30-3-171, Ala.Code 1975. The procedure for the review of DHR’s decision to *419 suspend or revoke the license of a person who has failed to pay child support, referred to as the “obligor” in the statute, is set forth in § 30-3-172, Ala.Code 1975, which reads as follows:
“(a) Upon receipt of a request for a hearing, [DHR] shall schedule a hearing for the purpose of determining if withholding, restricted use, or suspension of the obligor’s license is appropriate. [DHR] shall stay withholding, restricted use, or suspension of the license pending the outcome of the hearing. The hearing shall be for the purpose of contesting the determination of [DHR] of all of the following: (1) That the obligor is at least six months delinquent in child support payments. (2) That the obligor has not entered into a payment plan approved by [DHR], (3) If appropriate, that the obligor has failed to comply with a warrant or subpoena relating to a paternity or child support case. (4) That the withholding, restricted use, or suspension of the license is appropriate. No evidence with respect to the appropriateness of the support order or the ability of the obligor to comply with the support order shall be received or considered at the hearing.
“(b) If the obligor fails to respond to the notice of intent to withhold, restrict the use of, or suspend a license, fails to timely request a hearing, or fails to appear at a scheduled hearing, the obli-gor’s defenses, objections, or request for a payment plan shall be considered to be without merit and [DHR] or its agent shall enter a final decision accordingly. “(c) If [DHR] or its agent determines that the obligor is delinquent in making support payments and that the obligor has not entered into a payment plan, or that the obligor has failed to comply with subpoenas or warrants relating to paternity or child support proceedings, [DHR] or its agent shall notify the obli-gor of [DHR’s] decision and the obligor’s right to seek judicial review of the decision pursuant to the Alabama Administrative Procedure Act by filing a notice of appeal and a cost bond with [DHR] within 30 days of receipt of the agency’s decision. A petition for review shall be filed in the Circuit Court of Montgomery County or the circuit court of the county where a party resides. The filing of a notice of appeal "will result in an automatic stay of withholding, restricted use, or suspension of the obligor’s license pending the outcome of the appeal.
“(d) If the requirements for seeking judicial review are not met within 30 days, [DHR] shall send a notice to the licensing authority instructing it to suspend the obligor’s license. A determination of [DHR] is independent of any proceeding of the licensing authority to withhold, restrict use of, suspend, revoke, deny, terminate, renew, or issue a license.”
Furthermore, DHR — or its agent — is the only entity the Legislature has authorized to reinstate a suspended or revoked driver’s license under these statutes. The procedure for reinstatement is as follows:
“(a) When, following the withholding, restricted use, or suspension of a license, [DHR] or its agent determines that the support debt or support obligation has been paid in full or a satisfactory payment plan has been negotiated, or the obligor has complied with subpoenas or warrants relating to paternity or child support proceedings, [DHR] or its agent, at the request of the obligor, shall send notice requesting reinstatement of the license to the licensing authority and the obligor. Notice to the licensing authority to reinstate the license shall not limit the ability of [DHR] or its agent to issue a new decision and notice in the event of another delinquency.
*420 “(b) When a license has been revoked pursuant to Section 30-3-173 [dealing with multiple delinquencies], the obligor may obtain a new license only if [DHR], upon request of the obligor, makes a determination and notifies the licensing authority that the obligation has been paid in full or a satisfactory payment plan is in place and the obligor is complying with the plan or the obligor has complied with subpoenas or warrants relating to paternity or child support proceedings. Upon receipt of the notification, the licensing authority may issue a new license pursuant to the statutes or regulations governing the reissuance of a license by the licensing authority.”
§ 30-3-175, Ala.Code 1975.
We find nothing ambiguous in the statutes at issue regarding the bounds of the circuit court’s authority. The Legislature clearly granted DHR or its agent the authority to make all decisions regarding whether to suspend or revoke an obligor’s driver’s license when he or she has failed to pay child support for at least six months and to reinstate the obligor’s driver’s license when the arrearage has been paid or a payment plan acceptable to DHR has been reached. There is no provision in the applicable statutes that allows a circuit court to override the decision of DHR except as part of a judicial review conducted in accordance with the Alabama Administrative Procedure Act (“AAPA”). § 30-3-172(c). From the record, it appears that the father never requested an administrative review of the suspension of his driver’s license. Clearly, the issue was not before the trial court pursuant to the AAPA. Instead, the record shows, the issue arose when, during a hearing on DHR’s petition seeking to lift the stay on the father’s sentence of incarceration because of his continued failure to pay child support, the father mentioned that his driver’s license had been suspended. Thus, whether to reinstate the father’s driver’s license was not an issue that the trial court could properly consider.
Furthermore, we note that although § 3-3-172(a) applies to administrative hearings, it does set forth the type of evidence the Legislature intended to exclude in a determination of whether the suspension or revocation of a driver’s license was appropriate. Section 30-3-172(a) provides that “[n]o evidence with respect to ... the ability of the obligor to comply with the support order shall be received or considered at the hearing” to determine whether the suspension or revocation of the license was appropriate. Despite that explicit prohibition, the trial court apparently considered such evidence when it ordered DHR to reinstate the father’s license, stating from the bench that it was ordering reinstatement of the license, because otherwise, “[DHR] and [the] child are not going to get a dime if [the father] can’t work, and if he doesn’t have his license and he’s just going from one little job to another hoping construction is going to open up, [DHR] and the child are not going to get any money.”
The trial court exceeded its authority in ordering DHR to reinstate the father’s driver’s license. Indeed, to allow the trial court to exercise authority in lieu of DHR in this case would violate the separation of powers mandated by the Alabama Constitution of 1901, as DHR points out. Article III, § 43 of the Alabama Constitution of 1901, provides as follows:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the *421 judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
As an administrative agency, DHR is an agency of the executive branch of government.
“The word ‘administrative’ is synonymous with the word ‘executive.’ The word administrative ‘[cjonnotes of or pertains to administration, especially management, as by managing or conducting, directing, or superintending, the execution, application or conduct of persons or things.’ Black’s Law Dictionary 45 (6th ed. 1990) (emphasis added).[5] Thus, ‘[ajdministrative acts’ are ‘[tjhose acts which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body’ Id. (emphasis added). In fact, it is common to use the two words in tandem. See, e.g., Point Props., Inc. v. Anderson, 584 So.2d 1332, 1338 (Ala.1991) (‘Although absolute immunity from § 1983 actions is available to government officials performing legislative functions at the municipal level, generally only qualified or “good faith” immunity has been extended to government officials performing discretionary functions that are characteristically executive or administrative.’ (emphasis added)); Roberts v. Baldwin County Comm’n, 733 So.2d 406, 408 (Ala.Civ.App.1998) (‘ “the actual exercise of [the power to prevent] the destruction of a public roadway is in the nature of an executive or administrative function” ’) (quoting Point Props., Inc., 584 So.2d at 1337-38) (emphasis added); Tischer v. Housing & Redevelopment Auth. of Cambridge, 693 N.W.2d 426, 429 (Minn.2005) (‘Separation of powers requires that [discretionary decisions of an executive body] be granted deference by the judiciary to avoid usurpation of the executive body’s administrative prerogatives.’ (emphasis added)).
McInnish v. Riley, 925 So.2d 174, 185-86 (Ala.2005).
The Legislature granted authority to DHR to suspend, revoke, or reinstate the driver’s license of one who is delinquent in his or her child-support obligation.
“Courts should not under the guise of existing judicial power usurp merely administrative functions by setting aside a lawful administrative order upon the court’s conception as to whether the administrative power has been wisely executed.
“The judicial branch of government was not intended to be and will not presume to act as a super agency to control, revise, modify or set at naught the lawful acts of administrative agencies. It is under restraint (§ 43, [Ala.] Constitution 1901) from imposing its methods or substituting its judgment for that of the executive and legislative branches of the government.”
Finch v. State, 271 Ala. 499, 504, 124 So.2d 825, 830 (1960). In this case, the trial court’s order prevents DHR from carrying out its legislative mandate, and, thus, it violates the separation-of-powers provision of the Alabama Constitution of 1901.
For the reasons set forth above, the judgment is reversed, and the cause is remanded to the trial court for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
*422 MOORE, J., concurs in part and concurs in the result, with writing, which BRYAN, J., joins.

“5 The definition of ‘administrative’ was not carried forward with the seventh or eighth edition of Black’s Law Dictionary.”